| UNITED STATES DISTRICT COURT | NOT FOR PUBLICATION |
| EASTERN DISTRICT OF NEW YORK | |

| | |
|---|---|
| FRANK HANNIBAL, | |
| Plaintiff, | MEMORANDUM & ORDER |
| – against – | |
| EDWIN SANCHEZ, SPENCER NEWMAN and THE PORT AUTHORITY OF NEW YORK AND NEW JERSEY, | 13-CV-640 (ERK) (MDG) |
| Defendants. | |

KORMAN, J.:

Plaintiff Frank Hannibal ("Hannibal") commenced an action against Officer Edwin Sanchez ("Sanchez") of the Transportation Safety Administration (the "TSA"), Officer Spencer Newman ("Newman") of the Port Authority Police Department, and the Port Authority of New York and New Jersey (the "Port Authority," and, collectively with Sanchez and Newman, the "defendants"). Hannibal asserts three causes of action arising out of an incident that occurred on an airport security line and that involved a jar of peanut butter.

## BACKGROUND

On the morning of March 13, 2012, Hannibal, along with his wife and two young daughters, arrived at LaGuardia Airport ("LaGuardia") to catch an American Airlines flight to Tucson, Arizona. Am. Compl. ¶ 17-18, ECF No. 24 ("AC"). When Hannibal's carry-on luggage was x-rayed at the security checkpoint, a TSA screener discovered a sealed jar of peanut butter and a sealed jar of jelly that Hannibal had purchased at a Whole Foods supermarket. AC ¶ 19-20. The TSA screener became suspicious of the items upon observing that the oil had separated from the peanut butter inside the jar. AC ¶ 21. The TSA screener informed Hannibal that he was not permitted to carry the jars on the plane, and that, if he wanted to keep the items, he

1

would have to place them inside his checked luggage. AC ¶ 20; Def. Edwin Sanchez's Statement of Undisputed Material Facts Pursuant to Local Civil Rule 56.1 ¶ 9-10, ECF No. 32-1 ("Def. Sanchez's 56.1 Statement"). Hannibal agreed to check the jars of peanut butter and jelly and left the security line. AC ¶ 22. When Hannibal's wife noticed that he was exiting the security line, she approached him and asked "what the problem was." AC ¶ 23. In a "very sarcastic tone," Hannibal replied, "[t]hey're looking to confiscate my explosives." AC ¶ 24.

Officer Sanchez, a Supervisory Transportation Security Officer of the TSA, was standing within earshot of the married couple. AC ¶ 25; Decl. of Joseph Madden ¶¶ 4-5, ECF No. 32-2 ("Madden Decl."); Def. Sanchez's 56.1 Statement ¶ 13. Officer Sanchez turned towards Hannibal and said, "[e]xplosives?" and then ordered Hannibal to "sit down." AC ¶ 25; Def. Sanchez's 56.1 Statement ¶ 13. Hannibal complied with the order. AC ¶ 26. Officer Sanchez made a phone call. AC ¶ 27. Within a few minutes, Officer Newman and several other Port Authority police officers arrived at the security checkpoint. AC ¶ 28. After conferring with Officer Sanchez, AC ¶ 29, Officer Newman spoke with Hannibal, who admitted that he made the statement about possessing explosives, Aff. of Spencer Newman in Supp. of Mot. to Dismiss ¶ 7, ECF No. 39-9 ("Newman Aff."); Aff. of Frank Hannibal ¶ 2, ECF No. 36, Ex. E ("Hannibal Aff."). Approximately ten to fifteen minutes later, Officer Newman handcuffed Hannibal and placed him under arrest. AC ¶ 30. Officer Newman took Hannibal to a holding cell at LaGuardia, and, approximately forty-five minutes later, Hannibal was transported to Queens Central Booking. AC ¶ 31.

The following morning, approximately twenty-five hours after being arrested, Hannibal appeared before a Judge of the Criminal Court of the City of New York, County of Queens. AC ¶ 32. Hannibal was charged with falsely reporting an incident in the second degree, a class E

felony, *see* N.Y. Penal Law § 240.55(1), and was released on his own recognizance. AC ¶ 32-33. Nearly three weeks later, the charges against Hannibal were dismissed. AC ¶ 34.

Subsequently, Hannibal commenced the instant action asserting the following claims against the defendants. First, Hannibal asserts a claim under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), alleging that Officer Sanchez violated his First, Fourth and Fourteenth Amendment rights by arresting him "without probable cause for engaging in protected speech," AC ¶¶ 37-41; Pl.'s Mem. of Law in Opp'n to Defs.' Mot. to Dismiss 4, ECF No. 37 ("Pl.'s Mem."). (Because the Fourteenth Amendment applies only to state actors, I assume that Hannibal is relying on the Due Process Clause of the Fifth Amendment.) Moreover, relying on 42 U.S.C. § 1983, he alleges a claim against Port Authority Police Officer Newman based on the same factual predicate. AC ¶¶ 43-48. Finally, Hannibal asserts a claim of false arrest under New York law against Officer Newman and the Port Authority. Pl.'s Mem. 4; AC ¶¶ 49-53.[1] Hannibal seeks $1,000,000 in compensatory damages and $1,000,000 in punitive damages for each of the three claims as well as any costs and attorney's fees permitted under 42 U.S.C. § 1988. AC ¶¶ 2, 41, 48, 54.

The defendants filed this motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6), or, in the alternative, for summary judgment pursuant to Rule 56(a). Officers Sanchez and Newman raise the affirmative defense of qualified immunity against Hannibal's constitutional claims. Officer Newman and the Port Authority argue that Hannibal's false arrest claim fails as a matter of law.

---

[1] Hannibal initially had asserted a claim of malicious prosecution under New York law against Officer Newman and the Port Authority, AC ¶¶ at 56-61, but has since withdrawn that cause of action, Pl.'s Mem. 22.

3

## DISCUSSION

### I. Standard of Review

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a material fact is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In determining whether there is a genuine issue of material fact, the court must resolve all ambiguities, and draw all inferences, against the moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

### II. An Overview of the Applicable Law

There are several threshold issues that I pass over for the moment. The one that must be addressed at the threshold relates to elements of a cause of action alleging that a defendant was arrested for exercising his First Amendment rights. The Supreme Court has expressly acknowledged that, while it "has recognized an implied cause of action for damages against federal officials for Fourth Amendment violations," it has "never held that *Bivens* extends to First Amendment claims." *Reichle v. Howards*, 132 S. Ct. 2088, 2093 n.4 (2012). Nevertheless, on the assumption that *Bivens* extends to such claims, the Supreme Court has held that an essential element of a cause of action for retaliatory claim of malicious prosecution was the absence of probable cause —an element which "must be pleaded and proven." *Hartman v. Moore*, 547 U.S. 250, 266-67 (2006). Moreover, in the wake of *Hartman*, a number of Courts of Appeals have concluded that *Hartman*'s holding applies equally to retaliatory arrests. *Reichle*, 132 S. Ct. at 2096 (citing decisions from the Sixth, Eighth and Eleventh Circuits). Under these circumstances, because it was not clearly established at the time of the arrest of the plaintiff in

*Reichle* that an arrest supported by probable cause could give rise to a First Amendment violation, the law enforcement officers, who made such an arrest, were "thus entitled to qualified immunity." *Id*. at 2097.[2]

Officers Sanchez and Newman stand in the same position as the defendants in *Reichle*. The law was not clearly established at the time they arrested Hannibal. Thus, they are entitled to prevail if there was probable cause for Hannibal's arrest even if the arrest was made in retaliation for the exercise of his First Amendment rights. Moreover, if there was probable cause for Hannibal's arrest, it would also resolve his false arrest claims asserted under the Fourth Amendment and New York law. *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) ("The existence of probable cause . . . is a complete defense to an action for false arrest . . . whether that action is brought under state law or under § 1983."). Against this backdrop, I address the issue of probable cause.

Probable cause exists "when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Caldarola v. Calabrese*, 298 F.3d 156, 162 (2d Cir. 2002). When determining whether probable cause exists a court "must consider those facts available to the officer at the time of the arrest and immediately before it." *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 569 (2d Cir. 1996). As the Supreme Court has repeatedly emphasized:

> In dealing with probable cause, however, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. . . . The rule of probable cause is a practical, nontechnical conception . . . .

*Brinegar v. United States*, 338 U.S. 160, 175-76 (1949).

---

[2] The same qualified immunity standard applies to causes of action under 42 U.S.C. § 1983. *See e.g.*, *Pearson v. Callahan*, 555 U.S. 223 (2009).

5

More significantly, officers asserting qualified immunity —such as Officers Sanchez and Newman— need only demonstrate the existence of *arguable* probable cause. *Zalaski v. City of Hartford*, 723 F.3d 382, 390 (2d Cir. 2013). Arguable probable cause exists if the officers reasonably believed that they had probable cause. "Therefore, in situations where an officer may have reasonably but mistakenly concluded that probable cause existed, the officer is nonetheless entitled to qualified immunity." *Caldarola*, 298 F.3d at 162.

To determine whether Officers Sanchez and Newman had probable cause, or, at the very least, arguable probable cause, to arrest Hannibal, I begin with the text of the statutes that Hannibal's conduct could have violated. Hannibal was arrested for violating § 240.55(1):

> A person is guilty of falsely reporting an incident in the second degree when, knowing the information reported, conveyed or circulated to be false or baseless, he or she . . . [i]nitiates or circulates a false report or warning of an alleged occurrence or impending occurrence of a fire, explosion, or the release of a hazardous substance under circumstances in which it is not unlikely that public alarm or inconvenience will result[.]

N.Y. Penal Law § 240.55(1).

The statement that Hannibal concededly made —"[t]hey're looking to confiscate my explosives," Hannibal Aff. ¶ 2— was arguably not "a false report or warning of an alleged occurrence or impending occurrence of a fire, explosion or release of a hazardous substance." Nevertheless, there are other provisions of the N.Y. Penal Law that are more applicable to this case and provide a basis for a finding of probable cause or arguable probable cause. Specifically, N.Y. Penal Law § 240.50(1) provides, "[a] person is guilty of falsely reporting an incident in the third degree when, knowing the information reported, conveyed or circulated to be false or baseless, he or she . . . [i]nitiates or circulates a false report or warning of an alleged occurrence or impending occurrence of a crime . . . under circumstances in which it is not unlikely that public alarm or inconvenience will result . . . ." N.Y. Penal Law § 240.50(1). Unlike § 240.55(1), § 240.50(1) does not require the initiation or circulation of "a false report or warning

6

of an alleged occurrence or impending occurrence of a fire, explosion or the release of a hazardous substance . . . ." Instead, it is enough that a defendant circulates a false report of an "alleged occurrence" or an "impending occurrence" of a crime. Under New York law, it is a crime to possess "any explosive or incendiary bomb . . . ." N.Y. Penal Law § 265.02(2). Thus, taking these two statutes together, Hannibal's statement taken at its face constituted a false statement that he was committing the crime of possessing explosives or a bomb. Moreover, particularly in the post-9/11 era, any statement —whether true or false— at an airport claiming that the speaker possessed explosives could result in public alarm or inconvenience. This is especially true where other persons in the vicinity may overhear only a snippet of a conversation or are not able to determine whether the statement was made sarcastically or seriously.

While the law enforcement officers who arrested Hannibal may not have had those statutes in mind, this fact is not relevant to the validity of the arrest. Indeed, the Supreme Court has held explicitly "that the fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify the action." *Scott v. United States*, 436 U.S. 128, 137-38 (1978). As Judge Lynch has observed, "[a]n officer retains probable cause to arrest a plaintiff even if the probable cause was for a crime different from what the police officers believed to have been committed." *Davis v. City of New York*, 373 F. Supp. 2d 322, 330 (S.D.N.Y. 2005) (Lynch, J.) (citations omitted).

Moreover, to the extent that First Amendment claim against Officer Sanchez turns on the fact that he called the Port Authority Police Department, there is no basis for a cause of action against him under *Bivens* even if it there was no probable cause for Hannibal's arrest. Officer Sanchez did not make the arrest. Instead, after overhearing the conversation that Hannibal had with his wife, he notified the Port Authority Police Department at LaGuardia. Upon arriving on

7

the scene, Officer Sanchez spoke with Officer Newman, who gave the following account of their conversation:

> [Officer] Sanchez told me that plaintiff Frank Hannibal was informed during screening that certain items he possessed could not be permitted on board the airplane, which he was going to board. [Officer] Sanchez also informed me that when Mr. Hannibal was told the options regarding what could be done with the items, Mr. Hannibal stated to his wife, I have to check in my contraband and explosives. I then spoke with Mr. Hannibal who admitted to me that he made the aforementioned statement.

Newman Aff. ¶¶ 5-7. Subsequently, "Port Authority Police Sergeant Laurence Goldberg also responded to the [airport security checkpoint], and he too spoke with the TSA personnel present [there], as well as Mr. Hannibal. *Sgt. Goldberg advised [Newman] to arrest Mr. Hannibal*, who [Newman] charged with Falsely Reporting an Incident in the Second Degree." Newman Aff. ¶¶ 8-9 (emphasis added).

On this record, there is no basis for imposing liability on Officer Sanchez for the arrest of Hannibal. Dean Prosser has observed that in order to hold a defendant responsible for an arrest made by a law enforcement officer, "the defendant must have taken some active part in bringing about the unlawful arrest itself . . . . There is no liability for merely giving information to legal authorities, who are left entirely free to use their own judgment . . . ." William L. Prosser, *Law of Torts* 47 (4th ed. 1971). While a person who knowingly gives false information to a police officer may be held liable for an arrest made in reliance to that information, *see Friedman v. New York City Admin. for Children's Servs.*, No. 04-CV-3077, 2005 WL 2436219, at *8 (E.D.N.Y. Sept. 30, 2005), the information provided by Officer Sanchez was entirely true and the decision to arrest Hannibal was made by Sergeant Goldberg.

Particularly apposite here are cases under 42 U.S.C. § 1983 in which a plaintiff seeks to hold a private party liable for an arrest made by a state law enforcement officer. The cases appear to be unanimous in holding that the provision of background information to a police

officer does not by itself make a private person liable as a joint-participant in state action. *Ginsberg v. Healey Car & Truck Leasing, Inc.*, 189 F.3d 268, 272 (2d Cir. 1999) (citing cases). The only case departing from this line of precedent is *Tobey v. Jones*, 706 F.3d 379 (4th Cir. 2013), in which a divided panel of the Fourth Circuit held that the defendant TSA officers had caused Tobey's arrest by contacting local law enforcement officers for assistance when Tobey protested screening procedures at an airport security checkpoint, *id*. at 385-86. This holding was rejected by the Third Circuit in the following discussion with which I agree:

> We disagree with the *Tobey* majority's conclusion that "[i]t is an undoubtedly natural consequence of reporting a person to the police that the person will be arrested." That conclusion does not appear to have been based on anything in the record. Rather, it seems to arise from the majority's personal assumptions and inferences. However, absent something on the record to the contrary, it seems just as likely that police officers who are summoned by TSA [o]fficials would use their own independent discretion to determine whether there are sufficient grounds to take someone into custody.

*George v. Rehiel*, 738 F.3d 562, 583 (3d Cir. 2013). In the present case, the record clearly indicates that the Port Authority officials used —particularly Sergeant Goldberg, who made the decision to order the arrest of Hannibal— their own independent discretion to determine whether there were sufficient grounds to take Hannibal into custody.

## III. The Due Process Clause Claims

Hannibal alleges that Officers Sanchez and Newman violated his clearly established rights to due process by arresting him without probable cause. AC ¶¶ 39, 46. The Supreme Court has held that, "if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997) (citing *Graham v. Connor*, 490 U.S. 386, 394 (1989)). In this case, Hannibal's due process claim fails "[b]ecause the Fourth Amendment provides an explicit textual source of constitutional protection against [arrests without probable

9

cause]." *Graham*, 490 U.S. at 395. Consequently, "that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *Id.* In any event, the conduct alleged here would hardly satisfy the "shocked the conscience" standard necessary to make out a due process violation. *Rochin v. California*, 342 U.S. 165 (1952).

IV.     **False Arrest Claim Against Officer Newman and the Port Authority**

Hannibal asserts a claim of false arrest under New York law against Officer Newman and the Port Authority. AC ¶¶ 50-54; Pl.'s Mem. 4. Under New York law, "a plaintiff claiming false arrest must show . . . that the defendant intentionally confined him without his consent and without justification." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). Nevertheless, the existence of probable cause to arrest "is a complete defense to an action for false arrest" whether that action is brought under state law or federal law. *Id.* As discussed above, Officer Newman had probable cause to arrest Hannibal. Moreover, it was Port Authority Police Sergeant Goldberg who made the decision to order the arrest of Hannibal. Thus, the false arrest claim fails.

## CONCLUSION

This is not the first case in which a passenger has found himself arrested and charged with a crime for making a less than serious suggestion that he possessed a bomb at an airport. *See e.g.*, *United States v. Rutherford*, 332 F.2d 444 (2d Cir. 1964); *United States v. Allen*, 317 F.2d 777 (2d Cir. 1963). Nevertheless, while the discretion vested in law enforcement officers to make arrests in cases such as this may be open to question, the applicable statutes, including 18 U.S.C. § 35 in addition to the New York statutes at issue here, are premised on the assumption that the statements upon which the arrests are predicated are not true. Under these circumstances, particularly in a nonpublic forum such as an airport, *Int'l Soc. for Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672, 680 (1992), where restrictions on speech "need only be

10

reasonable and viewpoint neutral," *Make the Rd. by Walking, Inc. v. Turner*, 378 F.3d 133, 143 (2d Cir. 2004), I am unable to say that the arrest of Hannibal violated the Constitution or New York law. Accordingly, the defendants' motions for summary judgment are granted.

**SO ORDERED.**

Brooklyn, New York
August 5, 2014

/s/
Edward R. Korman
Senior United States District Judge